UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RANDY JOE DAVIS, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | )   Case No. 4:20-CV-98 SRW |
| | ) |
| ANDREW SAUL | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant(s). | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The matter is fully briefed. ECF Nos. 11-13. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

Plaintiff Randy Joe Davis was a carpenter and concrete finisher. He suffered degenerative joint disease in his right knee and right shoulder. These health problems made it difficult to continue in his occupation. On August 1, 2016, Mr. Davis filed an application for disability benefits and supplemental security income under Title II, 42 U.S.C. §§ 401, *et seq*. and Title XVI, 42 U.S.C. §§ 1381, *et seq.* Tr. 176-83. Plaintiff's application was denied on initial consideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 123, 130. Plaintiff appeared, without counsel, for an initial hearing on August 22, 2018. Tr. 56-92.

Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") Delores Gonzalez. *Id*. On March 28, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-27. The ALJ found Mr. Davis was not able to continue in his former occupation, but he could obtain other jobs in the national economy. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which the Appeals Council denied on November 21, 2019. Tr. 1-3. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.     Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

4

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found here that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 1, 2015; Plaintiff has the severe impairment of degenerative joint disease of the right knee and right shoulder; and Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 19-21. The ALJ found that Plaintiff has the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ropes, ladders, or scaffolds, but can occasionally climb ramps and stairs. The claimant can occasionally stoop and crouch, but can never kneel or crawl. He can occasionally reach overhead with right upper extremity.

Tr. 21. At Step Four, the ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 25. The ALJ further found Plaintiff was born on October 30, 1964, and was 51 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age. Tr. 26. Plaintiff has a limited education and is able to communicate in English. *Id*. The ALJ determined that the transferability of job skills was not material to the determination of disability because, using the Medical-Vocational Rules as a framework, it supported a finding that the claimant was "not disabled," whether or not the claimant has transferable job skills. *Id*. At Step

Five, relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that the Plaintiff could perform, including Mail Room Clerk, Photocopy Machine Operator, and Courier. Tr. 26-27. The ALJ concluded that Plaintiff was not under a disability from December 1, 2015, to the date of her decision, March 28, 2019. Tr. 27.

### IV.     Discussion

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ failed to properly evaluate Plaintiff's mental impairments as severe at step two; and (2) the ALJ's RFC determination that Plaintiff can do light work is not supported by substantial evidence.

#### A.     Step Two – Severe Mental Impairment

Plaintiff argues the ALJ erred in deciding his impairments of anxiety disorder, affective disorder, and alcohol use disorder were not severe. He believes the evidence is sufficient to satisfy the *de minimus* standard at step two of the analysis.

At step two of the disability analysis, the ALJ determines if a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant does not have a severe medically determinable impairment, or combination of impairments, then he or she is not disabled. *Id*. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). It is the claimant's burden to establish his impairment is severe. *Id*. Although it is a "*de minimus*" standard to meet, it is not toothless. *Id*. at 708; *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).

Here, the ALJ determined Plaintiff had severe impairments of degenerative joint disease of the right knee and right shoulder, but that Plaintiff's mental impairments of affective disorder,

6

anxiety disorder, and alcohol use disorder, singly and in combination, are not severe because they do not cause more than minimal limitation on Plaintiff's ability to perform basic work activities. Tr. 20-25. In making this determination, the ALJ considered that there are no objective tests or notations of symptoms in the record related to these impairments, Plaintiff's examinations remained "relatively benign" throughout the time period, and there is no evidence Plaintiff sought treatment with a dedicated mental health practitioner or substance abuse counselor. Tr. 20. At the hearing, Mr. Davis described limitations on his ability to work caused by the knee and shoulder problems. When the ALJ asked him about his depression, he only said, "I'm not working. That depresses me bad." Tr. 73. Mr. Davis did not testify that his mental health conditions interfered with his ability to work.

The ALJ also looked at the four broad areas of mental functioning used to evaluate mental disorders, known as "paragraph B" criteria found in 20 C.F.R., Part 404, Subpart P, Appendix 1. Tr. 20-21. She found Plaintiff had no limitation in understanding, remembering or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, and maintaining pace; and no limitation in adapting or managing oneself. Tr. 21. Thus, with no more than mild limitations in any of the functional areas, the ALJ concluded that Plaintiff's mental impairments were not severe. *Id*.

Substantial evidence supports the ALJ's conclusion. There is no evidence in the record of Plaintiff seeking help from a mental health professional for his impairments. Nor is there any evidence that he sought help for mental health problems from the medical professionals he did see. Plaintiff argues he did not seek help because he could not afford it. However, there are no records or testimony that he sought help from any free clinics, or that he sought information on how to obtain low-cost or free mental health services. *See Murphy v. Sullivan*, 953 F.2d 383,

7

386-87 (8th Cir. 1992) ("[T]here is no evidence that the claimant sought to obtain any low-cost medical treatment from her doctor or from clinics and hospitals . . . there is no evidence the claimant had been denied medical care because of her financial condition.")

In January 2017, Plaintiff reported to the emergency room with complaints of hypertension. Tr. 366-70. He stated he had been under a lot of stress lately and the notes state he was "nervous/anxious." Tr. 367, 370. However, the notes also say the severity of his hypertension was mild, that he had a normal mood and affect, his behavior was normal, and his thought content was normal. Tr. 367-68. He was discharged after being advised to limit his sodium intake. Tr. 369. Doctors did not prescribe him any medication or recommend he see a mental health professional. Tr. 366-70. The only evidence in the medical record of Plaintiff's mental impairments, beyond this one ER visit, is Dr. Paul Rexroat and Dr. Robert Cottone's evaluations of Plaintiff.

Dr. Rexroat, a licensed psychologist, did a psychological evaluation of Plaintiff in November 2016. Tr. 347. He reviewed Plaintiff's medical records and the Function Reports which Plaintiff and his girlfriend submitted. *Id*. Dr. Rexroat noted in his report that he easily established rapport with Plaintiff, and Plaintiff was socially confident and comfortable in his interactions. Tr. 348. He stated Plaintiff's approach to assessment tasks was methodical and orderly, and although challenged by difficult items, Plaintiff was persistent when working through the tasks. *Id*. Dr. Rexroat observed no unusual or bizarre behaviors during the session. *Id*.

Dr. Rexroat concluded Plaintiff can understand and remember simple instructions, he can sustain concentration and persistence with simple tasks, he can interact socially, and he has mild limitations in his ability to adapt to his environment. Tr. 351. He found Plaintiff had few

8

limitations in social functioning as he has several friends and sees friends once a week, sees his girlfriend three to four times a week, and see his mother most days. *Id*. Plaintiff told Dr. Rexroat that he has occasional mood swings, worries excessively and cannot stop worrying, feels restless, and is upset because he cannot work and support himself anymore. Tr. 350. He stated he feels down every day, and disgusted but not worthless. Tr. 351. Dr. Rexroat determined Plaintiff described symptoms of persistent depressive disorder and generalized anxiety disorder, and that Plaintiff appeared to be in partial remission from alcohol dependence. *Id*.

The ALJ gave limited weight to Dr. Rexroat's opinion because it was based on a limited, one-time evaluation of Plaintiff rather than a history of treatment. Tr. 25. Plaintiff argues the ALJ inappropriately discounted Dr. Rexroat's opinion and did not give good reasons for dismissing the opinion. When determining the weight to give a medical opinion, the SSA gives more weight to treating physicians who can provide a "detailed, longitudinal picture" of the medical impairment. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).[1] The SSA also considers the length of the treatment relationship and gives more weight to sources that have treated a claimant multiple times over a longer period of time. *Id*. Therefore, the ALJ in this case did not err in discounting Dr. Rexroat's opinion because he had only examined Plaintiff once.

But even if the ALJ had given Dr. Rexroat's opinion significant weight, it would make no difference to the ALJ's decision because Dr. Rexroat's opinion supports the ALJ's conclusion that Plaintiff does not have severe mental impairments. Dr. Rexroat opined that Plaintiff had no more than mild limitations in social functioning and his ability to adapt to his environment. Plaintiff can understand and remember simple instructions and can sustain concentration and

---

[1] These regulations apply to claims filed before March 27, 2017. Plaintiff filed his claim on August 1, 2016. Tr. 176-83.

persistence with simple tasks. Tr. 351. Mental impairments are not considered severe if a claimant's limitations are "none" or "mild." 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

Dr. Cottone, a state agency psychological consultant, reviewed Plaintiff's records in December 2016. Tr. 102-04. Dr. Cottone opined that Plaintiff was moderately limited in his abilities to understand and remember detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. *Id*. In all other categories, Dr. Cottone found Plaintiff not significantly limited. *Id*.

The ALJ afforded Dr. Cottone's assessment little weight. Tr. 24. The ALJ found Dr. Cottone's limitations are inconsistent with objective evidence. *Id*. Specifically, the ALJ noted Plaintiff's daily activities are inconsistent with Dr. Cottone's opinion that Plaintiff has moderate social limitations. *Id*. In fact, Dr. Cottone's own notes conflict with the severity of some of his findings and the record. He concluded Plaintiff is moderately limited in his ability to understand and remember detailed instructions but then stated in his notes that Plaintiff "*may* have *some* difficulty" understanding and remembering detailed instructions. Tr. 102 (emphasis added). Dr. Cottone concluded Plaintiff was moderately limited in his ability to complete a normal workday and workweek, but his only reasoning is that Plaintiff may need some degree of special supervision to ensure sobriety. Tr. 103. The Court notes there is no evidence in the record that

10

Plaintiff's alcohol consumption has negatively impacted his ability to work in the past or resulted in any discipline or termination.

Dr. Cottone concluded Plaintiff is moderately limited in his ability to set realistic goals or make plans independently of others but then noted Plaintiff "*may* have *some* mild-moderate limitations in adapting to stressful workplaces." Tr. 104 (emphasis added). In conclusion, Dr. Cottone stated Plaintiff "has moderate social interaction limitations and mild-moderate adaptation limitations that would be unlikely to be a problem in the performance of work tasks." *Id*. However, Plaintiff's own testimony conflicts with this conclusion. Plaintiff testified he does chores, including laundry, and he cooks. Tr. 74. He sees friends, takes care of his dog, and goes to the grocery store. Tr. 75, 78. He used to play in a weekly shuffleboard league but can no longer afford to do so. Tr. 76. Finally, although Dr. Cottone concludes Plaintiff is moderately limited in several areas, he provides no support for his reasoning. Dr. Cottone's conclusions are inconsistent with the objective evidence in Mr. Davis' case. For all these reasons, the ALJ appropriately gave Dr. Cottone's opinion limited weight.

Plaintiff has the burden to establish he has a severe mental impairment, and he has not done so. *Kirby*, 500 F.3d at 707. There is little to no evidence in the record to suggest Plaintiff's mental impairments significantly limit his ability to do basic work activities. There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's mental impairments are non-severe.

### B.     RFC Determination

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence. Specifically, Plaintiff argues the ALJ did not point to any medical evidence supporting her

11

conclusion Plaintiff can perform light work, and she failed to properly consider Plaintiff's testimony.

The ALJ found Plaintiff has the RFC to perform light work, but he can never climb ropes, ladders, or scaffolds, can occasionally climb ramps and stairs, can occasionally stoop and crouch, can never kneel or crawl, and can occasionally reach overhead with right upper extremity. Tr. 21. In support of her RFC determination, the ALJ considered Plaintiff's statements, his girlfriend's statements, his medical records, a December 2016 opinion from Dr. Gardland Tschudin, and a December 2016 physical consultative examination with Dr. Raymond Leung. Tr. 22-25.

The ALJ discounted Plaintiff's testimony finding the medical evidence and other evidence in the record did not support Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 22. First, she noted no objective evidence supports Plaintiff's alleged onset date, and there is no evidence of a severe medical determinable impairment until February 2017. *Id*. Next, she looked at radiographs of Plaintiff's right shoulder and knees which showed severe degenerative joint disease but not at a severity establishing total disability. Tr. 22-23. She also found his clinical examinations do not support the severity of his allegations. Tr. 23. He had tenderness and limited range of motion in his knees and shoulder, and a mild limp, but he had no deformities or swelling. He had good coordination and full-strength throughout his upper and lower extremities. *Id*. In his consultative examination, he could walk 50 feet unassisted, tandem walk, hop, heel walk, toe walk, and squat, he used no assistive device, and he could get on and off the exam table without difficulty. *Id*.

The ALJ also found there was no evidence Plaintiff was prescribed pain modalities such as a transcutaneous electrical nerve stimulator unit, nor did he require aggressive medical treatment or surgical intervention. *Id*. She noted his financial difficulties may have impacted his

12

medical decisions but found that he did not exhaust all efforts to seek treatment such as visiting free or subsidized clinics or urgent care. *Id*. She concluded his care was essentially routine and conservative in nature, consisting of a few injections and over-the-counter medication. *Id*.

Next, she looked at his testimony, finding that despite his impairments, Plaintiff engaged in a somewhat normal level of activity and interaction. *Id*. She also considered Dr. Tschudin's opinion that Plaintiff's physical impairments were non-severe, ultimately affording his opinion little weight because the medical evidence establishes Plaintiff has severe degenerative joint disease. Tr. 24. She gave Dr. Leung's findings significant weight because they were consistent with the record as a whole. Tr. 25. Finally, she gave Plaintiff's girlfriend's statements partial weight insofar as they were consistent with and supported by the objective medical evidence. *Id*. Substantial evidence in the record supports the ALJ's findings.

Plaintiff testified his knees just do not work anymore; he can stand for about 20-30 minutes before it starts hurting. About half of the time, when he stands up, his knees pop and he almost falls down. Tr. 64, 73. He cannot lift his right arm all the way over his head because at a certain point it hurts. Tr. 71. He testified he can probably lift 30-40 pounds, and occasionally 50 pounds. Tr. 73. He lives in a camper, and Plaintiff and his girlfriend do chores for the camper. Tr. 74. He cooks, usually microwave meals, and does his own laundry. *Id*. Although he reported in October 2016 that he cut his mother's grass with a riding mower, at the hearing in August 2018, he testified he can no longer do so, and he has not done so in two years. Tr. 75. He sees friends, visits his mother almost daily, and goes to the grocery store and laundromat. Tr. 75-76. He spends most of his day watching television. Tr. 76. He testified he has not had anything alcoholic to drink in six or seven months. *Id*. He cares for his dog; although, his girlfriend reports the dog takes care of him more than he takes care of the dog. Tr. 78. Both his mother and

girlfriend help him care for his dog, and his camper. Tr. 254. In October 2016, Plaintiff reported he can walk about a block if the ground is level; if the ground is uphill or uneven, he can walk about 20 feet. Tr. 258.

In November 2014, Plaintiff first reported to the hospital with knee pain. He was prescribed hydrocodone, acetaminophen, and ibuprofen. Tr. 303-04. The hospital discharged him three days later, his pain had improved along with his range of movement. Tr. 306. They recommended an orthopedic consult to have his knee drained. Plaintiff did so. *Id*. In December 2016, Dr. Leung examined Plaintiff. Tr. 354. Dr. Leung noted that he walks with a mild limp but he could walk 50 feet unassisted. Tr. 356. Plaintiff could also heel walk, toe walk, and squat. *Id*. Dr. Leung found Plaintiff's straight leg raising bilaterally was limited to 50 degrees in his right leg. He had a decreased range of motion in his right shoulder, knees, cervical spine, and lumbar spine. *Id*. Plaintiff also had a popping sensation in his knees. *Id*. Plaintiff had no difficulties getting on and off the exam table. *Id*.

Plaintiff's medical records jump to February 2017 when he saw an orthopedic physician, Dr. Couchman. Tr. 364-65. Dr. Couchman took films of his right knee and shoulder, and found that his shoulder showed "significant narrowing and spur formation consistent with [degenerative joint disease]" and his right knee showed "severe degenerative changes" with "complete loss of the medial joint space" and a "large popliteal mass." Tr. 366. Dr. Couchman concluded Plaintiff needed total knee replacement surgery. *Id*. He stated, "[C]onservative measures are going to be attempted (sic) at least see if we can buy him some time." *Id*. Dr. Couchman gave Plaintiff intra-articular injections in his right knee and right shoulder. *Id*.

A few weeks after this visit, Plaintiff called Dr. Couchman's office wanting another injection. Tr. 364. He was told he can only get injections every three months, and he should take

ibuprofen regularly for a few days and then use ice when he can rest. *Id*. In April 2017, Plaintiff visited a second doctor, Dr. Smith, who confirmed Dr. Couchman's degenerative joint disease diagnosis, and gave Plaintiff another knee injection. Tr. 363-64. He also gave Plaintiff a script for a knee brace and told Plaintiff he will need surgery to replace his knee. *Id*.

All of this evidence supports the ALJ's finding that Plaintiff has a severe impairment but is not yet totally disabled. The medical evidence and Plaintiff's testimony indicate his condition is worsening. Without proper treatment, Plaintiff may become totally disabled, but currently he is not. Plaintiff's conservative treatment supports the ALJ's finding that Plaintiff has the RFC to perform light work. The ALJ properly evaluated Plaintiff's symptoms by considering Plaintiff's daily activities, medications and the treatment he has received. *See* 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

As described above, Plaintiff's treatment consisted of over-the-counter pain medication and a few injections with a recommendation to use a knee brace. While Plaintiff has not had the recommended knee surgery for financial reasons, he also has not sought additional treatment, such as a TENS unit, prescription pain medication, or an assistive device from a free or subsidized clinic or urgent care. *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding conservative treatment, management with medication, and lack of required surgical intervention all support the ALJ's RFC determination). The ALJ properly considered all the relevant evidence, including medical records, observations of treating physicians and others, and Plaintiff's own description of his limitations in determining the RFC. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). Substantial evidence, which is enough evidence that a "reasonable mind might accept as adequate to support a conclusion," supports the ALJ's RFC determination

15

and ultimate conclusion that Plaintiff is not disabled. *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (citing *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998)).

## V. Conclusion

For the reasons set forth above, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Randy Joe Davis's Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 9th day of October, 2020.

*/s/ Stephen R. Welby*
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**